# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **MAURICE ANTIONE HUBBARD,** | ) |
| Petitioner, | ) Case No. 7:23CV00207 |
| v. | ) **OPINION** |
| **HAROLD W. CLARKE, DIRECTOR,** | ) JUDGE JAMES P. JONES |
| Respondent. | ) |

*Maurice Antione Hubbard, Pro Se Petitioner; Susan Hallie Hovey-Murray, Assistant Attorney General,* OFFICE OF THE ATTORNEY GENERAL, *Richmond, Virginia, for Respondent.*

In this Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, Petitioner Maurice Antione Hubbard,[1] a Virginia inmate proceeding pro se, contends that his confinement pursuant to state court judgment from 2019 is unlawful. Upon review of the record, I conclude that the respondent's Motion to Dismiss must be granted.

## I. BACKGROUND.

A grand jury for the Circuit Court for the City of Lynchburg returned indictments charging Hubbard with four felony counts of distribution of cocaine, third or subsequent offense, on specific dates in March and April 2016. Pet. 1,

---

[1] The petitioner's middle name is spelled as "Antoine" in the state records.

ECF No. 1.  On December 17, 2018, a jury found Hubbard guilty of all four counts.  At sentencing on July 31, 2019, the court imposed the mandatory minimum sentence of ten years for each of the four counts.  Br. Supp. Mot. Dismiss Ex. 1, Sentencing Order, Case Nos. CR16000701-00 through -03, ECF No. 13-1.

Hubbard, through counsel, appealed.  The Petition for Appeal challenged the sufficiency of the evidence to support his convictions and the decision of the trial court to allow his waiver of his Sixth Amendment right to counsel and allow him to try his case pro se before the jury.  The Court of Appeals of Virginia denied the appeal by per curiam Order entered April 16, 2020, and by writ panel Order entered May 18, 2020.  *Id.* Ex. 2, at 60, ECF No. 13-2.  Hubbard's subsequent appeal to the Supreme Court of Virginia was refused by summary Order dated March 24, 2021.  *Id.* Ex. 3, at 56, ECF No. 13-3.  Hubbard did not pursue certiorari in the United States Supreme Court.

On March 25, 2022, the Supreme Court of Virginia received Hubbard's pro se habeas petition.  *Id.* Ex. 4, ECF No. 13-4.  The petition did not assert any claims for relief.  An attached motion asked for additional time to complete his petition, indicating that he was "unable to file any claims with the filing form because the claims would have been allegations with no proof."  *Id.* Ex. 5, at 2, ECF No. 13-5.  On January 30, 2023, Hubbard also filed a motion seeking leave to file a belated

habeas petition in the Supreme Court of Virginia. *Id.* Ex. 6, ECF No. 13-6. By Order dated March 23, 2023, the Supreme Court of Virginia denied that motion and dismissed the habeas petition, pursuant to Va. Code Ann. § 8.01-654(A)(1), stating that it "fail[ed] to state a claim for relief." *Id.* Ex. 7, ECF No. 13-7.

Hubbard signed on December 1, 2022, and mailed to the Circuit Court for the City of Lynchburg a motion seeking to vacate his convictions. *Id.* Ex. 8, ECF No. 13-8. On January 6, 2023, the court denied that motion, citing the 21-day jurisdictional limitation on the modification of final orders imposed under Supreme Court of Virginia Rule 1:1. *Id.* Ex. 9, ECF No. 13-9. Hubbard noted an appeal of the circuit court's Order, which notice was signed on January 23, 2023. *Id.* Ex. 10, ECF No. 13-10. Records online indicate that the Court of Appeals of Virginia denied this appeal, Record No. 0683-23-2, on July 5, 2023, and denied a petition seeking rehearing by a three-judge panel on August 10, 2023.[2]

Hubbard signed and dated his federal habeas petition on February 6, 2023. In this petition, he raises two claims: (1) the waiver of his right to counsel at trial was not valid; and (2) the evidence was not sufficient to support his convictions. The respondent has filed a Motion to Dismiss, arguing that the habeas petition was

---

[2] Even if these online records were inaccurate, "[T]he pendency of parallel state court proceedings does not necessarily prevent federal courts from adjudicating § 2254 petitions containing fully exhausted federal claims." *Grass v. Reitz*, 643 F.3d 579, 585 (8th Cir. 2011) (citations omitted).

not timely filed under 28 U.S.C. § 2244(d)(1) and that the claims are without merit. Hubbard has responded, making the matter ripe for the court's consideration.

## II. Discussion.

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a state prisoner has one year to file his habeas petition under § 2254 beginning on the latest of four dates:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The record reflects that Hubbard did not file his § 2254 petition within the federal filing period under § 2244(d)(1)(A).[3]  Hubbard did not petition the

---

[3] Hubbard does not state any factual basis or argument on which I could conclude that the timeliness of his petition could be determined under any other subsection of § 2244(d)(1).

Supreme Court of the United States for a writ of certiorari within 150 days after the Supreme Court of Virginia refused his direct appeal on March 24, 2021. Therefore, his Lynchburg convictions became final on August 23, 2021.[4] On that date, Hubbard's one-year window to file a timely § 2254 petition opened. That window closed on August 23, 2022. Hubbard did not sign and date his § 2254 petition until February 6, 2023, almost seven months after his federal filing period under § 2244(d)(1)(A) had expired.

The federal filing period under § 2244 is tolled, or stopped, during the time when a properly filed state post-conviction proceeding is pending. 28 U.S.C. § 2244(d)(2).

> An application [for state post-conviction relief] is filed, as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record. . . . And an application is properly filed when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee.

---

[4] While the time to petition for certiorari normally has been 90 days, Sup. Ct. R. 13 (2023), in response to COVID-19, and by Order dated March 19, 2020, the Supreme Court extended the deadline to "150 days from the date of the lower court judgment, order denying discretionary review, or order denying a timely petition for rehearing." Order List, 589 U.S. By Order of July 19, 2021, the Court returned to the 90-day deadline for new petitions. Order List, 594 U.S. Hubbard did not petition the Supreme Court of Virginia for a rehearing in the direct appeal proceeding. The 150-day period after the Order dismissing his appeal expired on a Saturday, and the following business day was Monday, August 23, 2021.

*Artuz v. Bennett*, 531 U.S. 4, 8 (2000).[5] A state petition that "cannot even be initiated or considered due to the failure to include a timely *claim* is not 'properly filed.'" *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (emphasis added). Furthermore, the mere fact that a petition is afforded some measure of judicial consideration does not automatically deem that petition "properly filed" under state law. *Id.* at 414 (explaining that the filing of a petition is not a "juridical game of 'hot potato,' in which a petition will be 'properly filed' so long as a petitioner is able to hand it to the clerk without the clerk tossing it back").

Hubbard filed a document styled as a state habeas petition that was stamped received by the Supreme Court of Virginia on March 25, 2022. Under state law, a properly filed habeas petition must be filed within one year from "the final disposition of the direct appeal in state court" and must show "by affidavits or other evidence that the petitioner is detained without lawful authority." Va. Code Ann. § 8.01-654(A)(1), (2).

The state court in dismissing his petition did not rule his filing to be untimely under state habeas law. The court also did not find the petition to be properly filed, however. Hubbard's habeas petition did not allege any claim or claims for habeas relief whatsoever, let alone present proof that he was entitled to such relief. In the habeas form Hubbard submitted to the Supreme Court of

---

[5] I have omitted internal quotation marks, alterations, and citations here and throughout this Opinion, unless otherwise noted.

Virginia, he merely referred to an attached motion asking for more time to file his habeas claims. He did not assert any legal or factual ground on which he believed and hoped to prove that he was unlawfully confined. In dismissing Hubbard's state habeas petition, the Supreme Court of Virginia expressly held that his petition failed to state any claims for relief and denied his request to file a later pleading to present such claims.

I cannot find that Hubbard's issue-empty state habeas petition constitutes a properly filed state post-conviction remedy that qualifies to toll the federal habeas filing period under § 2244(d)(1)(A). Permitting Hubbard's claimless state petition to toll the federal filing period "would turn § 2244(d)(2) into a de facto extension mechanism, quite contrary to the purpose of the AEDPA and open the door to abusive delay." *Pace*, 544 U.S. at 413. Rather, I conclude that the pendency of Hubbard's state habeas proceedings, from March 25, 2022, until March 23, 2023, was not based on a properly filed state habeas petition and, therefore, did not stop the running of the one-year filing period during which he was permitted to file a timely § 2254 petition.

Further, Hubbard's filing of a motion to vacate his conviction on December 1, 2022, in the Circuit Court for the City of Lynchburg did not toll the AEDPA deadline. This circuit court motion was filed four months after Hubbard's convictions had become final for the purposes of tolling under § 2244(d)(1)(A) on

August 23, 2022. Thus, the filing and pendency of the motion to vacate or the subsequent appeal from that ruling could not toll the federal filing period.

Hubbard argues that this court should have granted his request to hold his federal petition in abeyance to allow him to exhaust state court remedies. *Rhines v. Weber*, 544 U.S. 269 (2005) (holding that district court had discretion to stay a mixed habeas petition to allow petitioner to present unexhausted claims to state court in the first instance and then to return to federal court for review of his perfected § 2254 petition). Hubbard's argument for a stay of his § 2254 action has no merit. At the time this court received Hubbard's § 2254 petition, he had exhausted his federal habeas claims during his direct appeal proceedings in the Court of Appeals of Virginia and the Supreme Court of Virginia. Thus, no ground existed for a stay of Hubbard's petition under the rubric outlined in *Rhines*.

An inmate's § 2254 filing may warrant equitable tolling of the statute of limitations when he demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010). Equitable tolling is appropriate in those "rare instances where — due to circumstances external to the party's own conduct — it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc). Hubbard fails to state any facts

indicating that his failure to file a timely § 2254 petition resulted from some circumstance outside his control that would make unconscionable the dismissal of his petition as untimely filed. On the contrary, as to the only two claims he raises in his federal petition, he knew all operative facts in time to raise the claims on direct appeal in the state courts. He offers no reason for failing to file them in a timely § 2254 petition.

Hubbard also does not make any showing of actual innocence to excuse his late filing of his federal petition. *McQuiggin v. Perkins*, 569 U.S. 393 (2013). To meet this exception and create a gateway for the federal court to consider his late-filed federal claims on the merits, Hubbard must "demonstrate that the totality of the evidence would prevent any reasonable juror from finding him guilty," based on "allegations of constitutional error [supported by] new reliable evidence that was not proffered at trial." *Finch v. McKoy*, 914 F.3d 292, 298–99 (4th Cir. 2019). Hubbard makes no such showing.

### III.

Finally, even if Hubbard were able to show some reason that I should consider his belatedly filed federal habeas claims on the merits, he fails to show factual grounds for the relief he seeks. The state courts that evaluated these claims rejected them. Under the AEDPA, a federal habeas court can only grant relief on a state claim, adjudicated on the merits in state court, if the state court's decision was

(1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). A decision is contrary to federal law only if it reaches a legal conclusion that is directly opposite to a Supreme Court decision or if it reaches the opposite result from the Supreme Court on facts that are materially indistinguishable from the Supreme Court case's facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state's decision is an unreasonable application of federal law only if the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The federal court must presume that the state court's factual findings are correct, and this presumption can be overcome only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The question is not whether a federal court believes the state court's factual findings or legal conclusions are incorrect, but whether they are unreasonable, which is "a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

The Supreme Court of Virginia did not issue an opinion when denying Hubbard's direct appeal. Therefore, on federal habeas review, this court "looks

through" the Supreme Court of Virginia's order and reviews the last reasoned state court opinion, which is the decision of the Court of Appeals of Virginia on Hubbard's direct appeal. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991). The deferential standard of review prescribed by § 2254(d) applies in reviewing the court of appeals decision.

Hubbard first claims that the trial court did not ensure that his waiver of trial counsel was knowing and voluntary. On this claim, the Court of Appeals of Virginia found as follows, in pertinent part:

> [Hubbard] was arrested on November 20, 2016, and the trial court appointed the Office of the Public Defender for the City of Lynchburg to represent him. Due to a conflict, the public defender's office withdrew as counsel on December 8, 2016, and the trial court appointed new counsel. On July 12, 2017, based on representations from counsel that "[c]ommunications have broken down between the defendant and his current counsel[,]" the trial court allowed counsel to withdraw.[6] On March 16, 2018, [Hubbard] again requested new

---

[6] Records reflect that on February 22, 2017, the court entered an Order for Evaluation of Competency for Hubbard. Br. Supp. Mot. Dismiss Ex. 2, at 17, ECF No. 13-2. On March 31, 2017, F. Christy McFarland, Ph.D., issued a report to the court, indicating that Hubbard's "thinking was quite rigid, that he suffered from a thought disorder, which manifested itself in his rigid and illogical thinking." *Id.* Because of the disorder, McFarland reported, Hubbard's "ability to reason about potential strategy decisions and potential outcomes of his case was significantly impaired." *Id.* at 17–18. Thus, the circuit court issued an order on May 1, 2017, directing that Hubbard be admitted to a state hospital to receive treatment to restore competency to stand trial. On June 5, 2017, just over two months after McFarland's findings, M. Logan Rowe, Ph.D., forwarded a report to the court dated June 5, 2017, summarizing Hubbard's stay at Western State Hospital, concluding that by that time, he was competent to stand trial. The report also noted that Hubbard's argumentative behavior was "due to maladaptive personality traits rather than symptoms of a major psychiatric disorder." *Id.* at 18. This report did not reference any treatment Hubbard received or needed for his "maladaptive personality traits." *Id.*

counsel because of the deterioration of the attorney-client relationship, and the trial court granted the request. Alleging that communications had "broken down" with his attorney, [Hubbard] moved for new counsel again on July 6, 2018.

At the July 11, 2018 hearing on the motion, [Hubbard]'s counsel explained that [Hubbard] was "unwilling to communicate with" him and stated that he did not believe that they would be prepared for the trial scheduled for the following week. Counsel suggested that [Hubbard] had "some options," including hiring "his own attorney if he's able to," or that he could "represent himself *pro se*." [Hubbard] claimed that he and his attorney were "not seeing eye to eye on case strategy" and that his counsel did not have his best interests in mind. The trial court reminded [Hubbard] that he had "had four of the most competent criminal defense attorneys we have on our [c]ourt appointed list" and noted that "[t]here's a pattern here." The trial court advised [Hubbard] that the court was unlikely to "find an attorney that's going to meet your requirements" and asked [Hubbard] if he "wish[ed] to represent [him]self and waive [his] right to an attorney" or if he wanted to hire his own counsel. [Hubbard] responded that he wanted to represent himself if he was able to do so.

The trial court informed [him] that the court would not "make a determination on who is capable of representing themselves" and advised [him] that "most individuals fall short of knowing how to represent themselves effectively." The trial court reminded [Hubbard] of the seriousness of the charges and that he had a "Constitutional right to represent" himself. Finally, the trial court inquired of [Hubbard]:

> And this [c]ourt needs to know what your intentions are and what you wish to do with respect to your representation because obviously none of the counsel that this [c]ourt has appointed to represent you has met with your satisfaction. So what are you asking for the [c]ourt to do here today other than relieve [current counsel]?

[Hubbard] responded, "Yeah, I would like to represent myself." The trial court advised [Hubbard] of the disadvantages of representing himself, verified that [he] was aware of the potential punishment he

> faced, and confirmed that [he] would have access to all the documentation that he required. After [Hubbard] signed a "Waiver of Right to Representation by a Lawyer," which indicated that [he] understood his rights and that he was voluntarily waiving his right to counsel, the trial court stated that [Hubbard] had "made clear that he wishes to represent himself[.]" The trial court also signed the waiver. The trial court then granted [Hubbard]'s request and allowed [him] to proceed *pro se*. The trial court appointed standby counsel to assist [Hubbard].
>
> On appeal, [Hubbard] argue[d] that the trial court "did not provide an adequate explanation on the record of the consequences of his request for self-representation."

*Id.* Ex. 2, at 52-53, ECF No. 13-2.

Based on these factual findings, the Court of Appeals of Virginia went on to rule as follows.

> The Sixth Amendment guarantees a criminal defendant "the Assistance of Counsel for his defense." U.S. Const, amend. VI. The right "implies" the concomitant right to represent oneself. *Faretta v, California*, 422 U.S. 806, 821 (1975). The unique right to appear *pro se*, known as the *Faretta* right, applies only when a defendant "truly wants to do so." *Id.* at 817. Courts scrutinize the good faith of the defendant's request as well as his manner of making it because a *pro se* defense "usually increases the likelihood of a trial outcome unfavorable to the defendant[.]" *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984). "[T]he right to self-representation is not absolute." *Martinez v. Court of Appeal*, 528 U.S. 152, 161 (2000). "To be successful, a *Faretta* request must be (i) timely, (ii) clear and unequivocal, and (iii) 'voluntarily, knowingly and intelligently made.'" *Edwards [v. Commonwealth*, 644 S.E.2d 396, 399–400 (Va. Ct. App. 2007)].
>
> After a thorough colloquy, the trial court found that [Hubbard] was competent, intelligent, and voluntarily chose to represent himself. The trial court granted [his] request and appointed standby counsel. Accordingly, the record demonstrates that [Hubbard] received the

>  relief that he requested.  At no time did [Hubbard] argue before the trial court that he did not wish to represent himself.  [His] multiple requests to represent himself and his knowing waiver of his right to counsel operated as a waiver that precludes his present complaint that the trial court erred when it granted his request to represent himself at trial.

*Id.* at 54.

Review of the transcripts in Hubbard's case reflect that he expressly and repeatedly declared his desire to represent himself, and that the court sufficiently warned him of the disadvantages of doing so.  Hubbard also clearly indicated that he understood the consequences he faced if convicted.  Hubbard fails to present any facts demonstrating that the state court's findings on this claim represent an unreasonable application of established federal law or an unreasonable determination of the facts.  Therefore, I cannot find that he has demonstrated any ground for relief under § 2254(d).

Hubbard's second § 2254 claim asserts that the evidence was not sufficient to support his convictions on four counts of drug distribution.  Sufficiency of the evidence to support a state court conviction beyond a reasonable doubt is a constitutional due process claim.  *Jackson v. Virginia*, 443 U.S. 307, 322 (1979).  The evidentiary standard for such a claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319.  Since the AEDPA,

> *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, it is the responsibility of the jury — not the [habeas] court — to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable.

*Coleman v. Johnson*, 566 U.S. 650, 651 (2012). In other words, even when "[r]easonable minds reviewing the record might disagree" about the jury's finding and the state courts' ruling that the evidence was sufficient, under the deference demanded by § 2254(d) "on habeas review that does not suffice to supersede" the state courts' sufficiency ruling. *Rice v. Collins*, 546 U.S. 333, 341–42 (2006). To grant relief on a § 2254 habeas claim that centers on factual issues, such as a sufficiency of the evidence challenge, "a federal habeas court must find the state-court conclusion 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Id.* at 338 (citing § 2254(d)(2)).

Hubbard simply has made no such showing. The confidential informant, Hawkins, testified that Hubbard was the individual to whom he sold drugs four times in 2016. Law enforcement evidence corroborated these meetings and the drug purchases and the purchase contents. The only evidence Hubbard's

submissions offer in support of his sufficiency challenge is contained in his Petition for Appeal in the Court of Appeals of Virginia.  There, he complained that Hawkins' testimony was inherently incredible because it was allegedly fabricated to support Hawkins' efforts to escape his own criminal charges, because Detective Booth did not have total control over the drug buys that Hawkins made, and because no police officer could independently identify him as the dealer who sold drugs to Hawkins.  The jury heard evidence of these issues and resolved all of them against Hubbard.  Moreover, the Court of Appeals of Virginia recited in detail the facts before the jury and found that from those facts, the jury determined sufficient evidence to support a finding that Hubbard was guilty of the offense as charged, beyond a reasonable doubt.

On this record Hubbard fails to present any facts demonstrating that the state court's findings on this claim represent an unreasonable application of established federal law or an unreasonable determination of the facts.  Therefore, I cannot find that he has demonstrated any ground for relief under § 2254(d).

## IV. Conclusion.

For the stated reasons, I conclude that Hubbard's Petition was not timely filed, that he has not established any ground for tolling, and that his claims are without merit.  Therefore, I will grant the Motion to Dismiss.  A separate Final Order will be entered herewith.  I decline to issue a certificate of appealability

because Hubbard has not made a substantial showing of the denial of a constitutional right and reasonable jurists would not find the court's procedural ruling to be debatable or wrong.

    DATED: February 22, 2024

    /s/  JAMES P. JONES
    Senior United States District Judge